943 F.2d 52
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TRANSCONTINENTAL LEASING, INC., Plaintiff,
Hussein Z. Keilani, Plaintiff-Appellee/Cross-Appellant,
and
Durant & Durant, P.C., Petitioner-Appellant/Cross-Appellee,
v.
MICHIGAN NATIONAL BANK DETROIT, NBA, Defendant.
 Nos. 90-1223, 90-1224 and 90-1247.
 United States Court of Appeals, Sixth Circuit.
 Sept. 5, 1991.
 
 Before KEITH, BOGGS and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The parties to this appeal are the law firm of Durant & Durant ("Durant") and the estate of Hussein Keilani. The titular plaintiff, Transcontinental Leasing, Inc., a corporation controlled by Keilani while he was alive, and the titular defendant, Michigan National Bank of Detroit, are not parties to this matter.
 
 
 2
 Durant represented Keilani during a part of his action against the defendant bank. The subject matter of the firm's dispute with its former client and his estate is a fund belonging to Keilani's estate, which was deposited with the court below. By order of the district court, the fund is to be used to satisfy Durant's claims for fees for representing Keilani in his suit against the bank and in other actions brought in state court against other defendants. Durant appealed the district court's first order disposing of this fund. We affirmed in part, reversed in part, and remanded for further fact-finding by the district court. Durant now appeals the order of the district court on remand in so far as the order is adverse to his claims. Keilani's estate cross-appeals those parts of the order adverse to it. We dismiss this appeal for lack of jurisdiction, Durant having failed to file timely notice of appeal.
 
 
 3
 * The background to this case is Durant's representation of Keilani in numerous state court actions. At the time these suits were under way, Keilani was unable to pay Durant's fees. When Durant undertook to represent Keilani in his suit against Michigan National Bank, the firm required him to sign a fee payment agreement. In pertinent part, the agreement specified that Keilani was to assign a portion of the prospective judgment against the bank to Durant in payment for the firm's fees as they became due. Pursuant to this agreement, Keilani executed two assignments in Durant's favor. The first was for $35,000. It was executed in September 1984, when Keilani owed Durant $1,973.25 in fees. The second assignment was executed in March 1985. Its value was $70,000. At the time, Keilani owed Durant $36,098 in fees. Durant asked Keilani for a third assignment in the amount of $105,000 in October 1985, when Keilani's bill had risen to $74,948.92. Keilani refused and dismissed Durant instead.
 
 
 4
 Keilani ultimately won a $625,000 judgment against the bank. With interest, the amount approximately doubled. After the judgment, Keilani's numerous creditors presented the bank with claims. The bank responded by depositing the judgment with the court below to be distributed among Keilani's creditors according to their merits as determined by the court. Durant was among the claimants. It claimed $105,000 for the two assignments, an additional $10,632.20 to satisfy a "charging lien" representing additional fees Keilani owed Durant for legal services in his suit against the bank, and $45,020.05 on "retaining liens" arising from the firm's representation of Keilani in various state court actions.[1]
 
 
 5
 The district court found in Durant's favor with respect to the "charging lien" and the "retaining lien." With respect to the assignments, the district court determined that they merely created a security interest in favor of Durant. For this reason, the court refused to order any disbursement of funds deposited with it on the basis of the assignments. This court reversed the district court's determination that the assignments were simply security interests. We held instead that they created a property right in Durant in the judgment won from the bank. We were unable to determine whether the value of the assignments was $105,000, as Durant asserted, or $70,000, as Keilani maintained. We remanded the case to the district court to determine whether the second assignment executed by Keilani was to supersede the first assignment of $35,000, or to supplement it by assigning an additional $70,000. After reviewing the record on remand, the district court found that the assignments were intended to be "cumulative," i.e., the second assignment was to supersede the first. This finding established the total amount to which Durant was entitled on the basis of the assignments at $70,000.
 
 
 6
 Durant now appeals this determination of the district court. It also appeals the district court's refusal to award it an additional $2,000 out of the fund in the court's possession. This sum had been awarded to Durant when this court sanctioned Keilani for filing a frivolous motion asking for a clarification of our remand order. Keilani's estate cross-appeals the district court's order awarding $45,020.45 on the state court "retaining liens." The estate argues that the sum awarded represents interest upon interest and that it is usurious under Michigan law. The estate also argues that this court is without jurisdiction to hear this appeal because of Durant's untimely filing. If this position is correct, then the cross-appeal is also untimely, because the estate filed its notice of appeal after Durant did.
 
 
 7
 The foregoing account of the case is admittedly sketchy. Nothing more is required in view of our decision to dismiss this case on jurisdictional grounds. A reader desiring more detail may consult our opinion of July 11, 1989. See generally Transcontinental Leasing, Inc., v. Durant & Durant, supra at n. 1.
 
 II
 
 8
 We now turn to the events that unfolded after the district court's decision on remand and which deprive this court of jurisdiction.
 
 
 9
 The district court made the determination summarized above on November 28, 1989, in an oral opinion from the bench after argument by opposing counsel. Eight days before, on November 20, 1989, Keilani's counsel informed the court that his client had died. On December 8, 1989, Durant moved for a stay of disbursement of funds pending appeal. Durant's purpose in filing this motion was to prevent funds in excess of those awarded to it from being returned to Keilani's estate.
 
 
 10
 On December 22, 1989, the district court entered a final order distributing the funds in its possession pursuant to its oral opinion. The court also issued a second order on that date. This order granted Durant a stay of execution of the first order. After taking notice of Keilani's death, the second order concluded with the following language:
 
 
 11
 In the event that Durant fails to file and perfect its appeal of the November 28th decision within a period of sixty (60) days from this date, the [stay] which was entered today, shall become null and void and the remaining funds shall be paid to the estate of Plaintiff, Hussein Z. Keilani.
 
 
 12
 With this order, the clock began to run on the 30-day deadline for filing notice of appeal. See Fed.R.App.P. 4(a)(1). In other words, Durant had until January 22, 1990 to file a notice of appeal or to request a 30-day extension of the deadline. See Fed.R.App.P. 4(a)(5). Instead, Durant filed its notice on February 8, 1990. Although Durant filed less than sixty days after entry of the final order appealed from, no extension of the initial 30-day deadline of Rule 4(a) had been either requested by the firm or granted by the court.
 
 
 13
 To justify its tardy filing and its failure to move for an extension of the deadline, Durant relies on the district court's second order of December 22, 1989, which stayed the disbursement of funds for 60 days. Durant argues that the stay was effectively a 30-day extension of the deadline for filing a notice of appeal. According to Durant, such an extension was needed because the death of Keilani terminated the authority of his attorney to act as his agent. Hence, Durant asserts, there was no one on whom to serve notice of appeal until Michigan probate authorities appointed a personal representative for Keilani's estate. See Fed.R.App.P. 3(d) (clerk of district court to serve notice of appeal on appellee). As additional legal authority for its position that the untimely notice of appeal does not deprive this court of jurisdiction, Durant relies on the "unique circumstances" doctrine of Thompson v. Immigration & Naturalization Service, 375 U.S. 384, 84 S.Ct. 385 (1963) (per curiam). See also Birrell v. Brown, 867 F.2d 956 (6th Cir.1989) (application of "unique circumstances" doctrine by this court).
 
 
 14
 We reject Durant's arguments. The foundation of its position is that the district court's 60-day stay can only be understood as granting an extension of the filing deadline in view of Keilani's death. There are at least two reasons why we disapprove this reasoning.
 
 
 15
 First, we do not see why the death of Keilani in itself should excuse Durant from the obligation of filing timely notice with the district court clerk. We recognize that if Durant had filed a notice of appeal within 30 days of the final order appealed from, as required by Rule 4(a), there may not have been a party on whom to serve the notice as of the date of filing. Even so, this possibility does not support Durant's position. It is the clerk of the district court, not the appellant, who is charged with the duty of serving notice on the appellee. Fed.R.App.P. 3(d).
 
 
 16
 Second, we do not agree with Durant that the district court's stay must be interpreted as intending a 30-day extension of the deadline for filing notice. The district court speaks through its orders, and the stay order says nothing about extending the appeals deadline. The court below may have anticipated Durant's filing a notice of appeal or moving for an extension of the filing deadline when it set the term of its stay at 60 days. Even so, we do not see how this fact, if it is a fact, excuses Durant, a law firm, from complying with the Rules of Appellate Procedure.
 
 
 17
 Finally we do not agree with Durant that the doctrine of "unique circumstances" controls the case. The facts of this case differ from those in which the doctrine has been applied. Thompson reiterates the teaching of Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215, 217, 83 S.Ct. 283, 285 (1962).
 
 
 18
 In that case petitioner had, within the applicable period for filing his appeal, received from the trial court a 30-day extension on the time for filing his appeal on the ground of "excusable neglect based on a failure of a party to learn of the entry of judgment." (Citation omitted). Petitioner then filed his appeal within the period of the extension but beyond the original period. The Court of Appeals, concluding that there had been no "excusable neglect" ..., held that the District Court had erred in granting the extension and dismissed the appeal. [The United States Supreme Court] reversed the dismissal and remanded the case to the Court of Appeals "so that petitioner's appeal may be heard on its merits."
 
 
 19
 Thompson, 375 U.S. at 386, 84 S.Ct. at 398.
 
 
 20
 The Supreme Court reasoned that such a fact pattern creates "unique circumstances," arising from appellant's justified reliance on the district court's erroneous, although specific, extension of the filing deadline. Id. at 387, 84 S.Ct. at 399. In such circumstances, the untimely notice does not deprive a federal appellate court of jurisdiction to hear the appeal. Ibid. See also Birrell; Butler v. Coral Volkswagen, Inc., 804 F.2d 611 (6th Cir.1989).
 
 
 21
 In this case, the appellant has not relied on a district court's erroneous extension of the notice deadline. Instead, Durant relied on its own interpretation of the district court's stay. We do not consider such reliance "justified," as Thompson requires. Accordingly, we DISMISS this case for lack of jurisdiction.
 
 
 
 [1]
 The terms "charging lien" and "retaining lien" may require a bit of explanation. A "charging lien" is a lien placed on a client's judgment by an attorney who worked on the matter resulting in the judgment. A "retaining lien" is one which attaches to the client's property, e.g. his files, until the attorney's fees are paid. When Durant was dismissed by Keilani, Durant filed a motion in state court to determine its "retaining lien" entitlement pending Durant's turning over Keilani's files to his new attorney. The "charging lien" represents the amount by which Keilani's debt to Durant for services in his suit against the bank exceeded the value of the assignments
 This information is derived from our opinion of July 11, 1988, in which this court first considered this dispute over fees. See generally Transcontinental Leasing, Inc., v. Durant & Durant, P.C., Nos. 88-1122, 88-1193 (6th Cir. Jul. 11, 1989).